The next matter on our calendar is Montplaisir v. Capra Mr. Montplaisir's defense ended before it could begin when trial counsel failed to perform adequate pre-trial investigation into several matters that were critical for trial. I would just like to make sure I understand correctly which three issues you're raising. I think it is just three, am I right? For ineffective assistance of counsel? Yes, Judge Coates, that's correct. One is a failure to consult or call a DNA expert with respect to the existence of the defendant's DNA on the boxer shorts. That's one? That's one. It's a little bit broader, but that's essentially correct. It's a failure to consult or call a DNA rebuttal expert in general. On that issue? On that issue. Okay. And the second one is the failure to subpoena the victim's gynecological records. Correct. It's the failure to provide evidence of an alternate cause in response to Nurse Schnorer's testimony, part of which was the apparent lack of any steps that were taken by trial counsel to subpoena the medical records. That's correct. It's her gynecological records, the victim's gynecological records. That would be part of it, yes, Your Honor. No, I found that, I guess I'm asking these questions to make sure I'm focusing with CARE on your particular argument. So much was discussed. So what is the second argument? The second argument is related to the victim's medical records, and it is... But her gynecological records? That's correct. Okay. And then the third and last, as I understand it, is the failure to investigate both additional witnesses about the romantic relationship between the victim and your client, and specifically two categories of witnesses, family members of the victim and the defendant's neighbors. That's correct. Thank you. Thank you for that clarification. That's correct. And, you know, I think the critical point with the procedural default ruling is that under this Court's decisions in Fulton and Pierotti, when an ineffective assistance claim is premised on facts that are partly found within the record, but ultimately turns on facts outside of the record, that New York procedural law does not provide an adequate procedural default to deny habeas review. Was there an argument made in the State Court in the 440 proceeding with respect to that first issue you identified, the failure to call an expert with respect to the defendant's DNA on the boxer shorts? Yes, Your Honor. That was in the 440 petition? Yes. Now, I want to direct the Court's attention to State Court Record 159 to 161. Now, I would concede, Your Honor, that the language in that part of the 440 motion is not as clear and as lucid as it could have been, but the essential factual and legal premises of the argument, I think, were fairly presented there, and I think that as well at State Court Record 227 to 228, essentially the same factual and legal premises were put forward at that point. So I think that the DNA claim was fairly presented to the State Court. If we find it was not, and you don't address this in your brief, could you make an argument with respect to cause or prejudice? Well, Your Honor, I mean, there are a couple different avenues for cause and prejudice. One is that under, and you're right, we did not address this in our brief. What we addressed was potentially amendment of the habeas petition, which is permissible under Rhines and Rose v. Lundy, but there could be a potential argument under the Martinez and Trevino line of cases in the Supreme Court, which, again, we didn't brief, and so I don't want to prejudice my friend on the other side, but there are circumstances in which state courts or state law effectively make it impossible for ineffective assistance claims to be brought on direct appeal, and so it means that they must be brought in a collateral proceeding in state court. And so the absence of counsel or ineffective counsel on direct appeal in raising those claims would be taken as cause of prejudice. No. Okay. I'm saying if we find it wasn't raised in the 440, you have not argued cause and prejudice with respect, again, to the DNA on the boxer shorts. Let me, just one last question on this line, and then I'll cease. I thought the cross-examination of the state's expert with respect to the DNA, the then-defendant, now petitioner's DNA on the boxer shorts was fairly effective, wouldn't you agree? I'm not sure that I would agree, but even if it were effective, I think the evidence against that line of cases makes clear that even effective cross-examination cannot ameliorate the prejudice of the absence of a rebuttal expert when the state is relying on forensic and scientific information. And so I think even assuming R.U.N.D.O. was effective, I don't think that that would change the analysis in this case. He had a . . . didn't counsel at one point have an expert, but then not pursue that? Didn't he speak to the court about producing an expert? I'm not sure that he spoke to the court on the trial record about it. There are two letters that the state has offered . . . I guess that's what I'm thinking of. Yes. Yes, Judge Walker. There are two letters the state has offered to supplement the record. They were before the trial court, not the state court. They were not before the district court in this case. I think that those two letters actually confirm the absence of a procedural default and confirm the need for an evidentiary here in this case. I think the state's reliance on those letters, which were outside the trial record, confirms the trial record was not adequate to review these claims on direct appeal. And I think that the letters raise more questions than they answer in the case. We don't know whether this individual was a bona fide expert. We don't know the scope of the consultation and we don't know why this person was not called to testify at trial, if in fact their expertise was so valuable. I think that for either or both reasons, the 2006 and 2007 letters don't necessarily change the analysis in this case. I see that I'm . . . I guess the essential question is were her injuries possibly . . . on the second point, were her injuries possibly caused by some other event and not the alleged incident here? Yes, Your Honor. That's correct. And that really goes right in line with the Lindstadt and Gersten line of cases, which also . . . many of those cases also involved medical records. Etsy involved the medical records of a child sex abuse victim. Bell involved the medical records of a robbery and assault victim. And so Mr. Monplaisir's claims are not outside that line of cases and are squarely within them. And I would further emphasize, going back to Judge Cote's question about the DNA evidence, I think the prejudice of the DNA evidence in counsel's performance as to the DNA evidence is best illustrated by looking at the State's summation and what the State did with that evidence in its closing argument. What the State did, and this is at 474 to 476 of the trial record, essentially argued that what is the significance of the DNA evidence, what's the significance of the rarity of these statistical facts, is that it shows that there had been nonconsensual intercourse that night. That was the gravamen of what the State's argument was. And so what the State . . . what a rebuttal expert could have come in and done, as we pointed out at pages 56 to 58 of our opening brief, was it could have come in and said, you know, the material that was found on the underwear did not permit a reliable DNA sample or DNA profile to be determined. And I see that my time has expired. Thank you, counsel. Counsel, if you prevail today, you're asking for a hearing? That is correct, Your Honor. Thank you. Good morning. May it please the Court. Margaret C. Preez on behalf of Respondent Michael Capra. Your Honor, all . . . Your Honors, all three of Petitioner's claims were reviewable on direct appeal. The Relationship Witness claim, we submit that there was sufficient evidence within the court record for the appellate division on direct appeal to determine  The Relationship Witness claim, we submit that there was no ineffective The relationship, the, the, the evidence that there was a romantic relationship. There was, the evidence was very limited on that score, that there was a romantic relationship, uh, or that, that he was able to argue a romantic, uh, a romantic relationship. Um, one person was called from the hotel to indicate that they were friendly at one point. Um, but that's, that's not, I mean, I think he asked his lawyer to produce family members, uh, and to investigate further, uh, with friends and family, whether, whether there was, uh, other evidence that showed more intimacy. Yes, Your Honor. This was, um, we have to remember the fact that there was one witness that showed some intimacy is not, is, is not, you know, not, not the same thing as multiple witnesses. We have to remember what this evidence was relevant for. This was impeachment evidence, Your Honor. This was evidence that only became relevant once, once the victim got on the stand and testified that there was no romantic relationship, that it was purely, uh, friendship, that they were best, in fact, best friends. So it was not relevant until this witness testified. Wasn't it the core of his defense was that this was consensual from the get go? It wasn't that it was consensual. He was hedging in, in his defense. He was, his defense was, you cannot believe this victim. She is not worthy of belief, belief. And he cross-examined her, um, vigorously about why she was not worthy of belief because of her 30 year history of drug use. Common sense tells you that the issue in most of these cases is, was the sexual, uh, encounters, was the intercourse consensual or not? Uh, and that's, that's what rape cases are all about. It is. And one thing that petitioner did say in his 440, that the other reason why he had this relationship, these witnesses about the relationship was to, that it's harder to prove rape if they had had a prior sexual relationship. Whether or not that would have been something reasonable for defense counsel to have argued this wasn't rape because they had a prior sexual, sexual relationship. That's another question, but that's not what the defense was at trial. The defense was this victim was not credible and she was not credible for a number of reasons. And once it became clear that she was going to deny this relationship, defense counsel went out and got a witness and got a good witness. It wasn't just talking about the witness from the hotel, the hotel. She was somebody who was unbiased, unassailable, somebody who testified that victim visited petitioner every single day, they held hands. Victim sat on petitioner's lap. She saw them hugging. She saw them out in the neighborhood together. This gave the defense more than ample ammunition to argue that they had a romantic relationship and she was not credible. Consistent with a non-romantic relationship. And we know that there was one, right? That they used to get together and, and get high together and that kind of thing. And that was, that was the nature of their relationship. But the purpose of this testimony was impeachment. Government's position at trial was that it all changed on one occasion when he raped her. That's correct. That, that, that, that, so, so, um, uh, you know, they, but, but the extent of the intimacy, it seems to me is important. The extent of the intimacy was, was perhaps important, but, but perhaps not there in the contents of a sexual relationship, there certainly can be non-consensual sexual activity. So if, uh, the argument with respect to ineffectiveness and the failure to get witnesses adequately who could testify as to a romantic relationship is preserved and, and, uh, there is a request for a hearing, what is the state's position with respect to what the petitioner must show in order to get a hearing on that claim? He must show that there was certainly a reasonable, that, that counsel was deficient in not calling, um, the victim's mother and the victim's sister to testify about this relationship in addition to his own friends. Must he make that showing to get the hearing below? For instance, if we, in state, in state court, if we remanded the district court hearing on that issue, is there a threshold issue of what the petitioner must show in order to get a hearing on that claim? Yes, Your Honor. Petitioner must've shown that he diligently, um, tried to develop the hearing in federal court and district court on this issue. And our position is that in federal court, he did not make the required showing because under 440.10.30, because everything that he said was based upon his own word, his own claim that the victim's sister would come in and testify about, on his behalf about this relationship and mind you, this was somebody that he had broken up with seven years before and the victim's mother would have come in. In addition, he would have testified that these numerous witnesses who were friends of his, who lived in this single room occupancy hotel, they, who would have, would have come in and testified on his behalf when in state court, petitioner did not file any affidavits from any of these witnesses who were apparently willing and able to testify about this relationship. So he is not, we submit, provided. He claims he told his attorney. Certainly he claimed. Isn't that the essence of the ineffective? Yes. He claims he told his attorney, but we also have evidence in the direct appeal record in his own, um, pro se supplemental brief, where he said at SR 106, 105 to 106, that I essentially, I understand why my attorney wouldn't have been able to get these witnesses in because they were steeped in the culture, the street culture of drugs and prostitution. And he made this statement in the context of saying why he had wanted to be out pending trial, because his attorney could not find these witnesses. So. That's all. Of course, I understand what you're arguing now, but that's all extra record. That's all outside the record. All of those efforts to investigate and not investigate or whether it would have been successful or not successful is, is, is, is, um, it cuts against your argument that this could have been decided on the record. Yes, Your Honor. But what we have in the record is we have the testimony of the desk clerk, what she had and, and she convincingly defense counsel was able to argue based upon that testimony, that victim had lied about her testimony about the relationship. So what petitioner wanted to be able to exactly convincing that different conclusion. Well, certainly. And because this was a, where's the convincing part that they, they certainly that counsel was in a strong position to argue it. However, he was based upon that testimony. If you'd had petitioners, witnesses, petitioners, friends who had come in and said this petitioner's friends who we submit may not have been the most credible witnesses on this score, because they, for one thing, they were could have been biased because they were his friends and would have said what he wanted them to say about the relationship. Perhaps if they were in the room with them at the time, there might've been fifth amendment issues because as we know from the victim's testimony, whenever they got together, petitioner and victim, they were smoking crack, they were using alcohol. So there may have been perception issues that those witnesses had. That sounds like this all sounds like facts instead of guessing about this. Well, Your Honor, we brought out at a hearing. Well, Your Honor, we had the statement by defense counsel on the record of why he did not call a witness, why he did not pre-trial call a witness that's on the record. He's made a statement in court on the record that the reviewing court could have looked to, to determine why you didn't subpoena a witness to testify about the relationship prior to trial. So that was on the record. In addition to that, the court could review whether or not given her testimony, given that the testimony, whether or not the, a reviewing court could have determined whether or not there was any, any, um, prejudice by not having this litany of witnesses. The petitioner says he wanted to call. There are three issues. They're not just that one. Yes, Your Honor. The other about the failure to, to put on an expert, uh, and, um, in a case in which the DNA evidence is critical, uh, and, uh, either to challenge the DNA, uh, findings or to determine whether or not, uh, there was other, it could be interpreted, uh, different, the, the, the events could be interpreted from the DNA differently. From the record, the trial record at this case, the, the appellate division could clearly have found that defense counsel made a reasonable tactical decision to attack the DNA in the way he did, to address it in the way he did. So what? These were his boxer shorts. It's his DNA on those boxer shorts because he wore them. It was unreasonable for counsel to have addressed that particular issue in any other way. These were his boxer shorts. And the reviewing court is, I mean, it's, it's, it's clear, clear. And as the, as the court, court noted that the cross-examination of, of the this was, these were his shorts and it was not unusual, but it did not prove rape, that he, that, that she borrowed his shorts and his DNA was on them. With respect to the, the medical expert, the supposed medical expert, there is a, um, on the record colloquy with the court and counsel regarding the medical records. The DNA on the boxer shorts was used by the state to establish that there was, that there was rape or that there was, um, it was consistent with rape. They, what they argued, they said, hypothetically speaking, could, if, if somebody had ejaculated into the victim's vagina and there was, there was discharge on the shorts, could that explain it? So yes, they, they tried to turn that to their best advantage, but it didn't matter. It didn't prove rape. It was his boxer shorts for a very good reason. And mind you, this is a reason that petitioner himself was arguing that in his habeas reply, he said, these were my shorts, of course, and they were unwashed. So of course my DNA was going to be on them. That didn't prove rape. Thank you counsel. Mr. Leach, you've reserved two minutes for rebuttal. Thank you, Your Honor. Just a few points. The first one I'd like to make is that the majority of the state's argument this morning was based upon an argument that they waived in the district court. And I direct the court's attention to appendix 52, note 13, where the state essentially, it acknowledges in its brief that it has, it was unclear as to whether or not, and they weren't going to press the procedural bar as to the fact witnesses. The, the other point I would make. If I could just interrupt is assuming we remand on the third issue, which is the failure to investigate adequately the witnesses about the romantic relationship, either the victim's relatives or the defendant's neighbors or petitioner's slash defendant's neighbors, um, what must the petitioner show in order to trigger the right to a hearing on that issue? So Your Honor, under federal law, the petitioner will have to present specific factual allegations that if proven would establish an entitlement to relief. And that's a standard taken from the Bracey versus Gramley decision, which this court confirmed in the Drake opinion, which we cited in our opening brief. And so now for purposes of the state law component and whether or not 2254E would apply, there's a diligence question. And so the state has made a number of arguments that Mr. Mompizer failed to comply with New York state procedural rules. And therefore he was not diligent. I'm afraid that's not correct. Mr. Mompizer. I'm, I, I am focused just on, I know you have a very helpful argument there that could illuminate this, but with, does he need letters or affidavits or something from these potential witnesses in order to get a right to a hearing? For purposes of federal law, I don't believe he does. It would certainly be helpful if he did, but under this court's decision in Drake and, and it was articulating the standard from Bracey versus Gramley, specific factual allegations are enough. And in Bracey, for instance, for instance, uh, a lot of the Supreme court acknowledged that a lot of the, the, uh, petitioner's allocations were essentially a theory at that point. And there was no solid support for them. And in Drake, it was enough that the, the individual presented suggestive evidence to support his claims. Thank you. Thank you. Thank you. Thank you. Both lively argument. We'll reserve decision.